UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Joleen Armstrong,

      Plaintiff,

v.

Mankato Area Public Schools,
Independent School District No. 77,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-2058 ADM/JSM

---

Jeffrey D. Schiek, Esq., and Philip G. Villaume, Esq., Villaume & Schiek, P.A., Bloomington, MN, on behalf of Plaintiff.

Susan E. Torgerson, Esq., and Charles E. Long, Esq., Kennedy & Graven, Chartered, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On July 9, 2013, the undersigned United States District Judge heard oral argument on Defendant Mankato Area Public Schools, Independent School District No. 77's (the "School District") Motion for Summary Judgment [Docket No. 26]. Plaintiff Joleen Armstrong opposes the motion. For the reasons set forth below, Defendant's motion for summary judgment is granted.

## II. BACKGROUND

In Minnesota, when an experienced teacher is hired by a new school, she is employed for a probationary period of at least one year. Minn. Stat. § 122A.40, subd. 5(a).[1] The school board

---

[1] "The first three consecutive years of a teacher's first teaching experience in Minnesota in a single district is deemed to be a probationary period of employment, and, the probationary period in each district in which the teacher is thereafter employed shall be one year." Minn. Stat.

is required to have the probationary teacher evaluated at least three times during the school year, after which, the teacher "may or may not be renewed as the school board sees fit." Id.

Armstrong was hired on a one-year probationary contract at Mankato West High School as a special education teacher for the 2011-2012 school year after having previously taught math at River Bend ALC in New Ulm, Minnesota. Armstrong, who was over forty years old when she was hired at Mankato West, has a master's degree in education. The School District was required to and did obtain a license variance from the State because she did not have a special education license. Over the course of the school year, the School District conducted at least three formal evaluations and several informal evaluations of Armstrong. At the end of the year, Armstrong's contract was not renewed.

## III. DISCUSSION

Armstrong claims the School District did not renew her contract in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, subd. 2 (2012). Am. Compl. [Docket No. 10] ¶¶ 29, 43. After the close of discovery, the School District moved for summary judgment, arguing Armstrong has failed to produce direct or circumstantial evidence that the School District discriminated against Armstrong on the basis of age.

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus.

---

§ 122A.40(5)(a).

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in its favor. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted).

**B. Age Discrimination**

Both the ADEA and MHRA prohibit discrimination against an employee based on age, and the court "analyzes the claims together, applying the same evidentiary framework." Rahlf v. Mo-Tech Corp., 642 F.3d 633, 637 n.2 (8th Cir. 2011). To establish age discrimination, a plaintiff may present either direct evidence of discrimination, or circumstantial evidence using the McDonnell Douglas burden-shifting test. Id. at 637; Hoover v. Norwest Private Mort. Banking, 632 N.W.2d 534, 542 (Minn. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)).

**1. Direct Evidence**

Direct evidence is evidence of conduct or statements by the individual who made the adverse employment decision, "show[ing] a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc). Statements such as "a woman can't handle" a particular job, or that "women in sales were the worst thing to happen to the company," are examples of direct evidence of

3

discrimination.  Id. (citations and quotation omitted).  However, direct evidence does not include "facially and contextually neutral" statements by decision-makers, nor does it include "stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process."  Id.; see Hamblin v. Alliant Techsystems, Inc., 636 N.W.2d 150, 154 (Minn. Ct. App. 2001).

Plaintiff has offered no direct evidence of discrimination.  Armstrong claims Sherry Blasing, the Assistant Principal at Mankato West, is a relevant decision-maker because the School District always agrees with termination recommendations from Blasing.  Furthermore, Armstrong alleges Blasing's evaluations are false and Blasing wrongly decided to recommend to the School District Armstrong's non-renewal of employment.  However, even assuming that Blasing is the relevant decision-maker, and not the School Board, Armstrong makes no allegations Blasing said anything discriminatory about her age.  Nor are there emails, written documentation, or policy statements suggesting age discrimination.

Armstrong also argues Anita Degrood was a decision-maker and her statements are direct evidence that the School District implemented a policy of age discrimination.  Degrood is a special education teacher at Mankato West and worked with Armstrong on a daily basis.  Degrood stated in deposition that she has been "a part of the interview process in hiring for different departments in the building, and there have been some very qualified people with really valuable experiences that weren't even considered" for teaching positions at the school.  Jeffrey D. Schiek Aff. in Opp'n Summ. J. [Docket No. 36] Ex. A at 27-29.  Degrood also noted an influx of younger teachers at the school and speculated that younger teachers may be hired because the School District can pay them a lower starting salary.  Id.  However, she admitted, "I don't know"

in reference to why it appeared the school was hiring younger teachers at the school. Id.

First, Degrood's observations are not direct evidence. She made no specific link between a discriminatory bias and Armstrong's non-renewal.[2] Her remarks are not based on any first hand knowledge of discrimination. Second, Degrood is not a relevant decision-maker. Regardless of her role on hiring panels, hiring panels were part of the interviewing process, acting as an advisory body, they did not make the hiring decision or extend a contract to the applicant. In addition, there is no evidence from the record that the hiring panels made non-renewal decisions. And there is no evidence that these hiring panels knew or considered the ages of applicants. Finally, in her deposition, Degrood admitted that she did not actually know why it appeared the school was hiring younger teachers.[3] Charles E. Long Aff. in Opp'n Summ. J. [Docket No. 33] Ex. 1 at 37. Therefore, since no direct evidence has been offered, Armstrong cannot avoid summary judgment for the School District on this ground.

**2. Circumstantial Evidence**

Under the McDonnell Douglas test, a plaintiff must first present a prima facie case of discrimination. Rahlf, 642 F.3d at 637; see Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 515 (8th Cir. 2011) (upholding the continued applicability of McDonnell Douglas

---

[2] Significantly, Armstrong was fifty-one at the time her one-year probationary contract was not renewed. Therefore, when the School District hired Armstrong, she was already over the age of forty, which is the age group Armstrong claims the School District routinely discriminates against.

[3] Armstrong also argued that the deposition testimony of two other former employees at Mankato West and her own deposition testimony is direct evidence. Mem. Opp'n [Docket No. 35] at 13-18. However, Armstrong does not argue that these individuals were relevant decision-makers and nothing else in the record suggests that they were; therefore, their speculations about discrimination are not direct evidence.

burden-shifting framework in light of Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)).[4] To establish a prima facie case of age discrimination, a plaintiff must show: (1) she was forty years old or older at the time of her termination; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) substantially younger, similarly-situated employees were treated more favorably. Onyiah v. St. Cloud State Univ., 684 F.3d 711, 719 (8th Cir. 2012); McGinnis v. Union Pac. R.R., 496 F.3d 868, 875 (8th Cir. 2007) (describing the fourth element as "replaced by another person sufficiently younger to permit the inference of age discrimination").

The School District concedes for purposes of argument that the first and third element are met. Whether Armstrong was qualified for the position to satisfy the second element is disputed. Whether a teacher hired for a special education job should be considered qualified when the school obtains a license variance on her behalf is debatable. Regardless, summary judgment for the School District is granted because Armstrong has failed to establish the fourth element. It is undisputed that at the start of the 2011-2012 school year, the School District hired 24 new teachers, all of whom were "probationary teachers" by virtue of it being their first year in the District. The teachers, not including Armstrong, ranged in age from twenty-four to forty-seven with 6 of them over the age of forty. At the end of the year, the School District did not renew the

---

[4] Gross makes clear that the overall burden to prove age discrimination remains with the plaintiff, but the Eighth Circuit Court of Appeals has repeatedly found the McDonnell Douglas framework helpful in analyzing whether plaintiff's circumstantial evidence makes a case of discrimination that should be sent to the jury. See also Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011).

contracts of 29 probationary teachers who ranged in age from twenty-three to sixty-one.[5] Twelve teachers were forty years old or above; the majority were under the age of forty. The School District argues this statistical evidence demonstrates that it was not discriminating on the basis of age. Indeed, Armstrong has failed to present any evidence of younger, similarly-situated employees who were treated more favorably. Instead, Armstrong argues that she was replaced by a teacher who was substantially younger and that "the obvious reason that the new younger teacher was treated more favorably is the fact that the new younger teacher has a job with the School District and the Plaintiff was terminated." Mem. Opp'n at 31. But, the fact that the younger teacher has assumed the duties of Armstrong's former teaching position does not, by itself, lead to a reasonable inference of age discrimination. See Otto v. City of Victoria, 685 F.3d 755, 759 (8th Cir. 2012). Armstrong has failed to establish a prima facie case of discrimination.

Even assuming Armstrong did establish a prima facie case, the School District must "articulate a legitimate, non-discriminatory reason" for the termination. Torgerson, 643 F.3d at 1046. The School District has offered several. First, Armstrong's evaluations by Blasing demonstrated that she was not performing up to expectations. Blasing recorded negative job performance in Armstrong's evaluations, including a lack of student engagement. Blasing then informed Armstrong of a need for improvement but later found Armstrong had made insufficient improvement. Second, Blasing stated the majority of Armstrong's students failed to make

---

[5] Again, the new teachers hired for their first year at Mankato West were not the only probationary teachers, as some new teachers have an initial three year probationary period. Presumably, this is why 29 probationary teachers could be non-renewed, even though only 24 probationary teachers were hired.

7

progress under her instruction. Blasing Aff. [Docket No. 30] ¶¶ 18, 19. Armstrong has not disputed that based on standardized test data, only 21% of Armstrong's students "demonstrated growth." Id. The Minnesota courts have determined that "[t]he purpose of the probationary period is to provide an opportunity for the school district to evaluate the teacher's skills." Montplaisir v. Indep. Sch. Dist. No. 23, 779 N.W.2d 880, 884 (Minn. Ct. App. 2010). And Minn. Stat. § 122A.40, subd. 5 gives a great amount of discretion to non-renew probationary contracts "as the school board shall see fit." Thus, even if the reason for non-renewal was as simple as, the newly hired teacher had a special education license and Armstrong did not, the School District was entitled to replace her with a licensed teacher.

Since the School District has offered legitimate, non-discriminatory reasons for not renewing Armstrong's contract, Armstrong must show some proof that the reasons offered were pretext for intentional discrimination. See Torgerson, 643 F.3d at 1046.

> A plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a prohibited reason more likely motivated the employer. Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action.

Id. at 1047 (citations and quotations omitted). To establish pretext, Armstrong refers the Court to the evidence she presented in her direct evidence and prima facie case arguments. Mem. Opp'n at 34. Armstrong's main evidence consists of three depositions of non-renewed teachers, including her own, and one deposition from Degrood who is also not a decision-maker and played no part in Armstrong's hiring and firing. These individuals give Armstrong's work positive reviews and they clearly disagree with the School District's decision not to renew Armstrong's contract, id. at 13-18; however, this is legally irrelevant. Armstrong's evidence

does not show that the School District's explanation is pretextual.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 26] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                                       BY THE COURT:

                                                      s/Ann D. Montgomery
                                                      ANN D. MONTGOMERY
                                                      U.S. DISTRICT JUDGE

Dated:  August 5, 2013.